IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK LEGAN,<br><br>Defendant. | CR 07–18–M–DWM<br><br>OPINION & ORDER |

## INTRODUCTION

Pending are Defendant Patrick Duane Legan's Motion to Vacate Multiplicitous Count (Doc. 53) and a petition to revoke Legan's supervised release (Doc. 49). Legan's Motion to Vacate is denied. For the reasons stated below, his supervised release is revoked only on Count I. Count II is dormant and forms no basis in fact or law for the sentence imposed for violating the conditions of supervised release on Count I.

## BACKGROUND

On July 10, 2007, Legan pled guilty to one count of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2) (Count I) and one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count II). (Doc. 28.) On February 8, 2008, Legan was sentenced to 132 months'

1

imprisonment on Count I and 120 months' imprisonment on Count II, to be served concurrently, and fined a $100 special assessment for each count. (Doc. 41.) Legan was also sentenced to a lifetime term of supervised release on each count, to be served concurrently. (*Id.*) He did not appeal the sentence.

A little over one month later, on March 20, 2008, the Ninth Circuit decided *United States v. Davenport*, 519 F.3d 940 (9th Cir. 2008). *Davenport* held that possession of child pornography is a lesser included offense of receipt of child pornography. *Id.* at 945. Accordingly, judgment of conviction for both offenses violates the Fifth Amendment's prohibition on double jeopardy. *Id.* 947–48. Legan did not move for relief or file a habeas petition after *Davenport*.

Legan began his terms of supervised release on October 13, 2016. On November 5, 2018, a revocation petition alleged that he had violated three conditions of his release. (Doc. 49.) At a revocation hearing on November 15, 2018, Legan admitted the first two violations and the Court dismissed the third upon the government's motion. The Court revoked Legan's supervised release on Count I. The day before the hearing, Legan filed a motion to vacate his conviction for either Count I or Count II as multiplicitous under *Davenport* and the Double Jeopardy Clause. (Doc. 53.) The parties discussed the motion at the hearing, but the Court delayed disposition of the motion, sentencing on the revocation as to

Count I, and the revocation as to Count II to allow further briefing. A final disposition hearing was held on December 7, 2018.

## LEGAL STANDARDS

Finality "is essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 289, 309 (1989). Accordingly, criminal defendants are limited in how and when they can challenge their convictions. The general rule is that a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 is the exclusive means of collaterally attacking a federal conviction. *Ivy v. Pontesso*, 328 F.3d 1057, 1059 (9th Cir. 2003). Federal prisoners cannot petition for habeas corpus under 28 U.S.C. § 2241 unless they first demonstrate that § 2255 is "inadequate or ineffective." 28 U.S.C. § 2255(e); *see also Ivy*, 328 F.3d at 1059. Similarly, other common law writs are only available "to the extent that they fill 'gaps' in the current systems of postconviction relief." *United States v. Valdez-Pacheco*, 237 F.3d 1077, 1079 (9th Cir. 2001). The default, then, is to construe any motion for relief from a final conviction as a motion under § 2255. *See United States v. Castro-Verdugo*, 750 F.3d 1065, 1071 (9th Cir. 2014).

## ANALYSIS

### I. Motion to vacate

Legan's simultaneous conviction and sentencing for possession and receipt of child pornography violates the Double Jeopardy Clause. The law of the Ninth

3

Circuit was not established when Legan was first sentenced. Now, Legan argues that *Davenport* makes his convictions unlawful in retrospect. Determining whether a rule applies retroactively only matters for *new* rules. *See Chaidez v. United States*, 568 U.S. 342, 347–48 (2013). *Davenport* was arguably a straightforward application of the *Blockburger* test. *See* 519 F.3d at 943–46. Under *Blockburger*, Legan's convictions and sentences were likely unlawful at the time they came down. *Davenport* just made that explicit. The issue, then, is not whether Legan's convictions are multiplicitous under *Blockburger* and *Davenport*—they are. Rather, it is whether anything can be done about it 10 years after the convictions have become final when there was no appeal and no petition under 28 U.S.C. § 2255.

Legan has not identified the legal basis for his motion to vacate. Consequently, it is treated as a motion under 28 U.S.C. § 2255 and denied as time-barred. Motions under § 2255 must be filed within one-year from the latest of

(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

4

28 U.S.C. § 2255(f). A conviction becomes final when the United States Supreme Court denies certiorari or the time to file a cert petition lapses. *See United States v. Gilbert*, 807 F.3d 1197, 1199 (9th Cir. 2015). If the defendant does not appeal, then a "conviction becomes final when the time for filing a direct appeal expires," *id.*, which was 10 days after the entry of judgment when Legan was sentenced, Fed. R. App. P. 4(b) (2008). Judgment was entered in this case on February 8, 2008. Legan did not appeal. Thus, his conviction became final on February 18, 2008, and the one-year limitation period to bring a § 2255 motion has long past.

Legan concedes that a § 2255 claim is time-barred. He argues, though, that § 2255 and similar provisions are merely vehicles for bringing a claim, and that he need not rely on them because the pending revocation petition puts his claim before the Court. This Court has no authority to vacate a 10-year-old conviction in a revocation proceeding. Legan asserts that the Fifth Amendment and the Supreme Court case *Ball v. United States*, 470 U.S. 856 (1985), authorize vacating a conviction at this late stage. He is incorrect. The Fifth Amendment's Double Jeopardy Clause provides that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend V. It does not proscribe a remedy for double jeopardy violations. *Ball* held that while a defendant can be prosecuted on multiplicitous counts—in that case possession and receipt of the same firearm—entering judgment on both counts violates the Double

5

Jeopardy Clause. 470 U.S. at 864–65. When that happens, the remedy is to vacate one of the multiplicitous convictions. *Id.* Together the Fifth Amendment and *Ball* explain what counts as a double jeopardy violation and how to fix it. They do not authorize courts to remedy any double jeopardy violation they come across in the absence of an identifiable procedural means to do so.

That authority must come from Congress. *See* U.S. Const. art. III, § 3. And, Congress has not provided it to a revoking court. The statute governing sentences of imprisonment, 18 U.S.C. § 3582, provides that even though a sentence of imprisonment can be modified in limited ways that are not relevant here, "a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes." 18 U.S.C. § 3582(b). The statute governing supervised release and revocation, 18 U.S.C. § 3583, does not allow a revoking court to dismiss or vacate convictions.

Indeed, the Ninth Circuit has expressly held that a revocation proceeding "is not the proper avenue through which to attack the validity of the original sentence." *Castro-Verdugo*, 750 F.3d at 1068. Castro-Verdugo pled guilty to illegal reentry and was sentenced to a term of imprisonment and probation. *Id.* at 1067. The imposition of both imprisonment and probation violated the court's statutory authority, but Castro-Verdugo did not appeal or otherwise move for relief. *Id.* Two years later, the district court revoked Castro-Verdugo's probation

after he pled guilty to illegal reentry again. *Id.* at 1067–68. On appeal, Castro-Verdugo challenged the district court's jurisdiction to revoke his probation, given the probation sentence was unlawful. *Id.* at 1068. The Ninth Circuit characterized the appeal as an impermissible challenge to the underlying conviction and explained that allowing such a challenge would thwart the statutory procedure Congress set forth in 28 U.S.C. § 2255. *Id.* at 1068–70. The Circuit then affirmed the revocation, notwithstanding that the probation was imposed in error. *See id.* 1072.

*Castro-Verdugo* refutes Legan's argument that the procedural posture of this case allows him to bypass the requirements of § 2255. From February 8 until February 18, 2008, Legan could have appealed. After that, he had one year to file a § 2255 motion. Perhaps he doubted his chances of success before *Davenport* made clear that his convictions were multiplicitous. But *Davenport* was decided on March 20, 2008, when Legan still had nearly 11 months to file a § 2255 motion. His time for doing so expired on February 18, 2009, and with it, this Court's power to provide the relief he seeks. Now, 10 years after Legan's convictions became final, his after-the-fact motion to vacate must be denied.

## II. Revocation

Denying Legan's motion to vacate does not end the inquiry. The remaining question is what bearing, if any, the multiplicity of his convictions has on the

7

revocation of the supervised release terms he is serving for those convictions. Legan argues that because he is serving concurrent terms of supervised release for multiplicitous convictions, revoking either or both terms would result in a double jeopardy violation. If one term is revoked, Legan will serve a revocation sentence concurrently with a supervised release term, and if both terms are revoked, Legan will serve two concurrent revocation sentences. He argues that either way he will be serving sentences for multiplicitous convictions and that the revocation judgment imposing one or both of those sentences will necessarily violate the Double Jeopardy Clause.

Revocation penalties, though, are attributed to the initial offense. *Johnson v. United States*, 529 U.S. 694, 700 (2000). "Thus, the entire sentence, including the period of supervised release, is the punishment for the original crime, and 'it is the original sentence that is executed when the defendant is returned to prison after a violation of the terms' of his release." *United States v. Soto-Olivas*, 44 F.3d 788, 790 (9th Cir. 1995) (quoting *United States v. Paskow*, 11 F.3d 873, 881 (9th Cir. 1993)). The revocation judgment does not result in a new double jeopardy violation, but would relate back to the original conviction and judgment, which, as described above, cannot be challenged at the revocation stage.

The Ninth Circuit has instructed that "a court should consider the petition for probation revocation as if the underlying conviction was unquestioned," *United*

8

States v. Simmons, 812 F.2d 561, 563 (9th Cir. 1987), and "that an underlying sentence may not always be valid, but that a court tasked with conducting or reviewing probation revocation proceedings may not investigate the validity of the original sentence," *Castro-Verdugo*, 750 F.3d at 1069.[1] Indeed, as described above, in *Castro-Verdugo* the Ninth Circuit affirmed the revocation of a probation term that should never have been imposed in the first place. *Id.* at 1072. To be sure, *Castro-Verdugo* involved a sentence that was statutorily invalid from the outset, while Legan's convictions and corresponding sentences are constitutionally invalid but may have been legally valid when they were imposed. Even so, *Castro-Verdugo* stands for the general proposition that a district court does not abuse its discretion by revoking an invalid sentence. Contrary to Legan's position, then, this Court could revoke both terms of his supervised release without violating the Double Jeopardy Clause.

However, Legan and the United States suggest that the equitable course of action is to terminate one count of his supervised release. But this Court's sentencing options are guided by statute, not equity. Section 3583(e)(1) allows a court, after considering the factors in 18 U.S.C. § 3553(a), to terminate a term of

---

[1] These cases involve the revocation of a term of probation, while Legan's case involves a term of supervised release. The focus is the revocation proceeding generally, not the type of sentence revoked. Thus, the distinction is irrelevant. *See* Fed. R. Crim. P. 32.1 (governing revocation in both instances).

9

supervised release after one year of the term has elapsed and "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."

Legan's conduct does not warrant terminating ether term of his supervised release at this time. At the hearing on November 15, 2018, Legan admitted to patronizing adult video stores and purchasing sexually explicit movies through his cable television provider in violation of Special Condition 6 of his supervised release, as modified, and to violating the terms of his sex offender treatment program in violation of Special Condition 2, as modified. The details surrounding those violations, as described in the petition for revocation (Doc. 49) are concerning, to say the least. But Legan's conduct raised concerns even before the present revocation. On February 8, 2017, a Report on Offender Under Supervision (Doc. 43) alleged that Legan possessed sexually explicit magazines in violation of Special Condition 6, as modified, and that he lied to the probation officer about the circumstances in violation of Standard Condition 3. On May 2, 2018, a second Report on Offender Under Supervision (Doc. 44) alleged that Legan had unauthorized contact with a minor in violation of Special Condition 4, as modified, and that he violated the rules of his sex offender treatment program in violation of Special Condition 2, as modified. Additionally, the conduct in the dismissed violation is irrelevant to the revocation issue, but it does point to significant

concerns about the "warranted by the conduct" argument or the interests of justice determination.

Even if Legan's conduct warranted terminating his supervised release, this Court would likely be barred from doing so by § 3583(k), which provides that convictions under 18 U.S.C. § 2252A carry a mandatory minimum of five years' supervised release. The Ninth Circuit has not considered whether a court's discretion to terminate supervised release under § 3583(e)(1) overrides § 3583(k)'s mandatory minimum. The Sixth and Seventh Circuits have held that § 3583(e)(1) overrides a mandatory minimum supervised release term imposed under § 3583(a). *United States v. Spinelle*, 41 F.3d 1056, 1060–61 (6th Cir. 1994); *Pope v. Perdue*, 889 F.3d 410, 414 (7th Cir. 2018). However, Legan's minimum supervised release term is required by § 3583(k), not § 3583(a). Section 3583(k) was enacted as part of the Adam Walsh Child Protection and Safety Act of 2006, Pub L. No. 109-248, § 141(e)(2), 120 Stat. 587, 603 (July 27, 2006), which, among other things, increased penalties for child pornography offenses. The purpose of the Act—to punish certain offenses more harshly—suggests that Congress did not intend for courts to terminate supervised release before the mandatory minimum has been served. However, because Legan's conduct does not warrant terminating his supervised release in the first place, the effect of § 3583(k)'s mandatory minimum need not be decided here.

11

Despite this Court being unable to terminate one term of Legan's supervised release under § 3583(e)(1) or to remedy the underlying multiplicitous convictions, fairness dictates that Legan's supervised release be revoked only as to Count I.

## Conclusion

Based on the foregoing, IT IS ORDERED that Legan's Motion to Vacate (Doc. 53) is DENIED.

IT IS FURTHER ORDERED that Legan's supervised release is revoked on Count I pursuant to the concurrently issued Judgment on Revocation.

DATED this 7 day of December, 2018.

Donald W. Molloy, District Judge
United States District Court